IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WYLA GREEN,

    Plaintiff,

  vs.             No.  CIV-07-_____

DAVID W. KING, in his individual and
official capacities; PUBLIC REGULATION
COMMISSION OF NEW MEXICO; HERB H.
HUGHES, in his individual capacity;
PATRICK BACA, in his individual capacity;
and BEN MONTOYA in his individual capacity,   **JURY TRIAL DEMANDED**

    Defendants.

**COMPLAINT FOR VIOLATIONS
OF CIVIL AND CONSTITUTIONAL RIGHTS**

   Plaintiff Wyla Green, by and through undersigned counsel, files this Complaint For

Violations of Civil and Constitutional Rights against Defendants David W. King, the Public

Regulation Commission of New Mexico, Herb H. Hughes, Patrick Baca, and Ben Montoya.

Plaintiff alleges against Defendants upon knowledge as to herself and all matters of public

record, and upon information and belief as to all other matters, as follows:

**PARTIES**

   1.  Plaintiff Wyla Green ("Ms. Green"), a female, was, at all times relevant hereto, a

resident of Santa Fe, County of Santa Fe, State of New Mexico.

   2.  Defendant David W. King ("Defendant King") is, on information and belief, a

resident of Alamogordo, Otero County, State of New Mexico.  Defendant King was elected to the

position of Commissioner of the Public Regulation Commission of the State of New Mexico in

November, 2002, and was sworn into office on January 1, 2003.  Between April and December, 2003, Defendant King was Ms. Green's direct supervisor, and had actual authority over Ms. Green's employment status, employment conditions, and employment opportunities.  In concert with Defendant Public Regulation Commission, Defendant King was responsible for the policies, practices, customs and operations of the Public Regulation Commission and had policymaking authority.  He is sued in his individual capacity for damages and in his official capacity for prospective relief.

3.      Defendant Public Regulation Commission ("PRC") is an administrative agency of the State of New Mexico and was the employer of Ms. Green at all times relevant hereto.  In concert with Defendant King, Defendant PRC was and is responsible for the policies, practices, customs and operations of the Public Regulation Commission.  Defendant PRC is sued for prospective relief only.

4.      Defendant Herb H. Hughes ("Defendant Hughes") is, on information and belief, a resident of Albuquerque, Bernalillo County, State of New Mexico.  Defendant Hughes served as a Commissioner of the Public Regulation Commission of the State of New Mexico from 1999 through December 31, 2004.  Between December 2003 and March 2004, Defendant Hughes was Ms. Green's acting supervisor for time and attendance matters, and had actual authority over Ms. Green's employment status, employment conditions, and employment opportunities.  In concert with Defendant Public Regulation Commission, Defendant Hughes was responsible for the policies, practices, customs and operations of the Public Regulation Commission and had policymaking authority.  He is sued in his individual capacity for damages.

5.      Defendant Patrick Baca ("Defendant Baca") is, on information and belief, a

resident of Corrales, Sandoval County, State of New Mexico. At all times relevant hereto, Defendant Baca served as Chief of Staff of the Public Regulation Commission of the State of New Mexico. Between December 2003 and March 2004, Defendant Baca was Ms. Green's acting supervisor for work assignments, and had actual authority over Ms. Green's employment status, employment conditions, and employment opportunities. He is sued in his individual capacity for damages.

6. Defendant Ben Montoya ("Defendant Montoya") is, on information and belief, a resident of Santa Fe, Santa Fe County, State of New Mexico. At all times relevant hereto, Defendant Montoya was employed by the PRC as an assistant to Defendant King. He is sued in his individual capacity for damages.

7. At all times material hereto, the individual Defendants acted under color of state law and/or under the local ordinances, policies and customs of the governmental entities and within the course and scope of their employment.

8. Defendants were, individually and through their officials, agents, servants, and employees, involved in and responsible for the acts hereinafter alleged. In committing the wrongful acts and omissions set forth below, the Defendants aided, abetted, incited, compelled and coerced the doing of unlawful discriminatory practices or attempted to do so, and engaged in threats, reprisals and discrimination against Ms. Green for having opposed unlawful discriminatory practices.

## JURISDICTION AND VENUE

9. All of the material acts and/or omissions to act complained of herein occurred in Santa Fe County, New Mexico.

10.     This Court has original jurisdiction over Ms. Green's federal claims pursuant to Title 28 U.S.C. §§1331 and 1343 (a)(3) and (4).

11.     Venue is properly laid in the District of New Mexico pursuant to Title 28 U.S.C. §1391(b).

## FACTUAL ALLEGATIONS

12.     Ms. Green was born in Roswell and raised in Raton and Edgewood, New Mexico. She received her Bachelor of Arts degree in Economics from the University of New Mexico in 1991.  Since 1983, she has been employed as a Quality Assurance and Program Management Professional with extensive experience in total quality program development, implementation, assessment and improvement in both the government and private sectors.  From 1996 through early 2003, she was employed in the automotive industry as a Program Manager and Senior Advanced Planning Engineer at Robert Bosch Corporation and Delphi-Safety and Interior Systems in Detroit, Michigan.

13.      In April 2003, Ms. Green was hired by Defendant King and Defendant PRC to serve as a Commissioner's Assistant to Defendant King.  Before Ms. Green agreed to accept this position, Commissioner King described her job responsibilities, including a wide range of duties such as maintaining constituent relations, handling complaints, acting as a liaison with community leaders, attending PRC meetings, interacting with PRC staff, handling press contacts, conducting research, traveling, and developing policies and procedures.  Based on these representations, Ms. Green agreed to move to New Mexico from Michigan to accept this position.  She began work the first week of May, 2003.

14.     As soon as Ms. Green arrived in New Mexico, Defendant King began making

4

inappropriate comments on her physical appearance.  He referred to her in public as his "new improved model."  He told her how attractive she was.  He told her that he loved her.

15.     In early June, 2003, Defendant King kissed Ms. Green directly on the lips while she was in his office.  Ms. Green immediately moved away and told Defendant King that what he did was wrong and to stop immediately.

16.     In mid-July, 2003, again in Defendant King's office, Defendant King placed his hand inside Ms. Green's jacket and quickly touched her bare back, then moved his hand to her buttocks before she had time to react.  Ms. Green immediately moved away and told him to stop. She was upset and distraught by his inappropriate behavior.

17.     In mid-October, 2003, again in Defendant King's office, Defendant King reached around and placed his arm around Ms. Green's waist and pressed her against him.  Ms. Green pulled away and told him sharply to stop.

18.     Ms. Green made it clear to Defendant King that his physical and verbal advances were unwelcome and that she wanted him to stop his inappropriate behavior.  Defendant King nonetheless persisted in his unwelcome sexual conduct.

19.     In late October, 2003, in Defendant King's office, Defendant King approached Ms. Green from behind without her knowledge and pressed his pelvic area against Ms. Green's buttocks as she was reaching across his desk for a pen.  Ms. Green was shocked and repulsed and immediately left the room.

20.     Because Ms. Green rebuffed Defendant King's advances, Defendant King retaliated against her by depriving her of further job assignments, informing her that she was to do nothing more than office work, and requiring her to begin working a strict 8 to 5 schedule,

primarily answering the phone, thus effectively relieving her of her former job duties.  Defendant

King instructed Ms. Green that she should no longer interact with legislators because she was too

attractive.  He also let it be known that he was no longer satisfied with her as an employee and

implied that she should look for another job.

21.    Defendant King's other assistant, Defendant Montoya, who is male, was not

subjected to these job restrictions.  Defendant King treated Ms. Green less favorably with respect

to her job duties and other tangible employment practices due to her gender, and due to her

rejection of his unwanted sexual advances.

22.    Defendant King's discriminatory conduct, his unwelcome sexual advances and

other verbal and physical conduct of a sexual nature, and his retaliatory conduct against her after

she rebuffed his advances, had the purpose and effect of unreasonably interfering with Ms.

Green's work performance and created an intimidating, hostile, and offensive working

environment for Ms. Green.  On November 26, 2003, pursuant to the PRC's written policies, Ms.

Green submitted a letter notifying Defendant Baca, in his capacity as PRC Chief of Staff, that she

was being sexually harassed by Defendant King, in addition to being the victim of discrimination

and retaliation.  Ms. Green also filed a charge against Defendant King and Defendant PRC with

the New Mexico Human Rights Division for discrimination, harassment, and retaliation on that

day.

23.    Defendant Baca and PRC EEO Officer Cydney Beadles told Ms. Green that they

would not investigate or otherwise take any action on her sexual harassment grievance against

Defendant King, in violation of the PRC's written policies and procedures.  Ms. Green informed

Defendant Baca and Beadles that she wanted to be protected against further harassment and

discrimination by Defendant King so that she could continue performing her duties as a Commissioner's Assistant.  However, the PRC took no action to assist Ms. Green in any manner or to remedy the situation.  Ms. Green was subject to further discrimination and retaliation from Defendant King and from Defendant Montoya, including pressure to retract her claims, locking her out of the office, and pressuring her to accept new restricted job responsibilities and working hours.  Defendant King and Defendant Montoya secretly and surreptitiously tape-recorded Ms. Green in the workplace, in violation of law.

24.     On or about December 18, 2003, Ms. Green was informed by another PRC Commissioner that Defendant King was trying to get rid of her.  Ms. Green immediately wrote a second letter to Defendant Baca, in his capacity as PRC Chief of Staff, based upon this information and the fact that she could not tolerate the hostile environment in which she had been left in Defendant King's office.  She again requested that the PRC take remedial action.

25.     Shortly after Ms. Green gave the second letter to Defendant Baca, Ms. Green was stripped of all Commissioner's Assistant responsibilities and forced to leave her office.  She was locked out of her computer and prevented from doing any further work.  She was physically removed from her office and from the PRC Commissioners' offices on the fourth floor of the PERA Building and relocated to the PRC legal department on the fifth floor, where she could be monitored.  Ms. Green was told that she had no choice in the matter.

26.     Ms. Green was directed that she would henceforth report to Defendant Hughes for time and attendance matters, but would take assignments from Defendant Baca.

27.     Ms. Green's computer, work history, e-mails and time sheets were all taken from her by Defendants.  Defendants removed Ms. Green from Commissioner Assistant distribution

7

lists and she no longer received e-mail.  Defendants removed Ms. Green as a Commissioner's Assistant from the PRC website.

28.     Due to Ms. Green's repeated requests, the PRC finally commenced an investigation of her sexual harassment grievance against Defendant King in late December, 2003. However, Ms. Green was not kept informed of the status of the investigation of her grievance, and in fact was deprived of all information.  The Defendants ignored her requests for information regarding the status of the investigation.  The Defendants did not adequately investigate Ms. Green's charges, and instead investigated Ms. Green.  Numerous individuals were contacted for the purpose of attempting to obtain damaging information against Ms. Green that would justify her termination.

29.     Ms. Green was ordered by her physician to take medical leave due to workplace stress experienced as a consequence of Defendants' actions.  Ms. Green requested administrative leave from the Defendants.  Defendants, through their attorney, denied the leave and stated in writing that Defendants would not forward the request for leave to the SPO Director, in violation of law.  Defendants, through their attorney, also required that Ms. Green submit her medical information directly to their attorney.

30.     Ms. Green submitted medical documentation to Defendant Hughes to support her request for administrative leave.  Defendant Hughes denied Ms. Green's request.

31.     Ms. Green requested that the Defendants provide her with a different working arrangement since Defendant Baca reported directly to Defendant King.  Defendant Baca denied her request.  PRC Commissioner E. Shirley Baca offered to have Ms. Green work in her office. Defendant Baca rejected that offer.  On information and belief, Defendant Baca and Defendant

Hughes were working in concert with Defendant King and his attorney in all matters pertaining to Ms. Green, including work assignments and monitoring of her attendance and performance.

32.     Ms. Green informed the Defendants that she was going to file a charge against them for retaliation based on their ongoing campaign against her.  On March 24, 2004, she filed a charge of retaliation with the New Mexico Human Rights Division against the Defendants named herein.

33.     After filing the retaliation charge, Ms. Green returned to work.  Several hours later, at approximately 5:00 p.m., Defendant Baca gave Ms. Green a letter from Defendant King terminating her employment with the PRC effective at 5:00 p.m. that same day.  Defendant Baca ordered Ms. Green to pack her personal belongings immediately and leave the premises.

34.     The reasons given by Defendant King for the termination were false and pretextual.  At the time that Defendant King terminated Ms. Green's employment, she was no longer working for him, but was instead assigned to work for Defendant Hughes and Defendant Baca.  Ms. Green was terminated in retaliation for her charges of harassment, discrimination and retaliation and because she refused Defendant King's sexual advances.

35.     Defendant King and/or the other named Defendants, and/or individuals acting on their behalf, notified the news media that Defendant King had terminated Ms. Green's employment and supplied the news media with confidential personnel documents containing stigmatizing, false and defamatory information regarding Ms. Green, in violation of law, and in further retaliation against her.

36.     The acts and omissions of the Defendants were committed intentionally, maliciously, willfully and/or with reckless or deliberate indifference, and in violation of Ms.

9

Green's clearly established constitutional rights to procedural and substantive due process, freedom of association, equal protection of the laws and freedom of speech guaranteed by the First and Fourteenth Amendments to the United States Constitution.

37.     The acts and omissions of the Defendants were committed in furtherance of a conspiracy amongst the individually-named Defendants for the purpose of depriving Ms. Green of the equal protection of the laws, and of equal privileges and immunities under the laws, causing injury as set forth below, in violation of 42 U.S.C. §1985.

38.     The rights in question were clearly established prior to the events complained of herein, and thus Defendants were or should have been aware that their conduct, as described herein, would be in violation of Ms. Green's rights.  The Defendants committed affirmative acts, participated in another's affirmative acts, and/or failed to perform acts which they were required by law to perform.

39.     In doing the acts set forth above, the individual Defendants acted fraudulently, oppressively, maliciously, recklessly, and in knowing and conscious disregard of and callous indifference to Ms. Green's rights, so as to justify an award of punitive damages.  Because of the aggravated nature of the conduct of the individual Defendants, Ms. Green is entitled to recover an award of punitive and exemplary damages against each Defendant in separate amounts.

40.     As a direct and proximate result of the wrongful and unlawful actions of Defendants, described above, Ms. Green was injured and has suffered and continues to suffer damages, including the deprivation of her rights, loss of earnings, loss of benefits, loss of promotional opportunities, loss of career opportunities, lost earning capacity, embarrassment, humiliation, indignity, insult, and damage to her reputation.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

WHEREFORE, Ms. Green respectfully prays for and demands judgment against the Defendants as follows:

(a)     Compensatory damages, including back pay, front pay, loss of earnings, loss of benefits, loss of promotional opportunities, loss of career opportunities, lost earning capacity, embarrassment, humiliation, indignity, insult, and damage to reputation and other consequential damages, in an amount to be determined at the trial of this cause;

(b)     Nominal damages;

(c)     For punitive damages against Defendants King, Hughes, Baca and Montoya;

(d)     Reinstatement and restoration of all benefits and privileges of employment;

(e)     Prejudgment and postjudgment interest, all in amounts to be determined according to law;

(f)     Reasonable attorneys' fees and costs; and

(g)     Such further relief, including equitable relief, as the Court deems just and proper.

Respectfully submitted,

ROTHSTEIN, DONATELLI, HUGHES,
DAHLSTROM, SCHOENBURG & BIENVENU, LLP
P.O. Box 8180
Santa Fe, NM 87504-8180
(505) 988-8004

By:     _JCB Electronically signed 2-12-07_____
John C. Bienvenu
Attorneys for Plaintiff Wyla Green

11